AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)     ☐ Original  ☐ Duplicate Original

| LODGED |
| --- |
| CLERK, U.S. DISTRICT COURT |
| 10/22/2024 |
| CENTRAL DISTRICT OF CALIFORNIA |
| BY: EC DEPUTY |

# UNITED STATES DISTRICT COURT

for the

Central District of California

| FILED |
| --- |
| October 22, 2024 |
| CENTRAL DISTRICT OF CALIFORNIA |
| SOUTHERN DIVISION AT SANTA ANA |
| BY   *Nancy Boehme* |
| Deputy Clerk, U.S. District Court |

| United States of America | |
| --- | --- |
| v. | Case No.   8:24-mj-00536 DUTY |
| Timothy Defino, | |
| Defendant | |

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of October 13, 2023, in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
| --- | --- |
| 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii) | Possession with intent to distribute methamphetamine. |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Jason N. Lup
_____
*Complainant's signature*

Jason N. Lup, Special Agent DEA
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:     October 22, 2024                    _____
                                                                    *Judge's signature*

City and state:   Santa Ana, California      Hon. Douglas F. McCormick, U.S. Magistrate Judge
                                                                    *Printed name and title*

MR:bm

## I. **AFFIDAVIT**

I, Jason N. Lup, being duly sworn, declare and state as follows:

## II. **INTRODUCTION**

1.      I am a Special Agent ("SA") with the Drug Enforcement Administration ("DEA"), an agency of the U.S. Department of Justice.  I have been so employed since November 2016.  I am currently assigned to Los Angeles Field Division ("LAFD") Orange County District Office ("OCDO").  At the OCDO, I am assigned to Enforcement Group-III ("ENF-III"), Los Angeles Field Division. ENF-III specializes in Counter-Narcotic Cyber and Dark-Web investigations.

2.      I have received specialized training concerning violations of the Controlled Substances Act contained within Title 21 of the United States Code, while in the DEA Academy located in Quantico, Virginia.  I have led and assisted in numerous drug investigations as a Special Agent.  I have debriefed defendants and witnesses who had personal knowledge of major drug trafficking organizations.  Additionally, I have participated in many other aspects of drug investigations including conducting physical surveillance, executing search warrants, and affecting arrests.  Based on my training and experience, I am familiar with drug traffickers' methods of operation including the distribution, storage, and transportation of dangerous drugs and the collection of money proceeds of said trafficking.  In addition, I have received training in, and am familiar with, methods employed by drug trafficking organizations

to thwart detection by law enforcement, including the use of
debit calling cards, public telephones, cellular telephones,
counter surveillance, false or fictitious identities, and encoded
communications.

### III. <u>PURPOSE OF AFFIDAVIT</u>

3.     This affidavit is made in support of a criminal
complaint against and arrest warrant for Timothy DEFINO,
(henceforth referred to as "DEFINO") for a violation of 21 U.S.C.
§§ 841(a)(1), (b)(1)(A)(viii) (Possession with Intent to
Distribute Methamphetamine).

4.     The facts set forth in this affidavit are based upon
observations, my training and experience, my review of reports by
the Long Beach Police Department ("LBPD"), records from law
enforcement databases, and information obtained from various law
enforcement personnel and witnesses. This affidavit is intended
to show merely that there is sufficient probable cause for the
requested warrant and does not purport to set forth all of my
knowledge of or investigation into this matter. Unless
specifically indicated otherwise, all conversations and
statements described in this affidavit are related in substance
and in part only.

### IV. <u>SUMMARY OF PROBABLE CAUSE</u>

5.     The DEA and LBPD are investigating Timothy DEFINO as a
known poly-drug distributor operating in the areas of Newport
Beach and Long Beach, California.

6.     Through this investigation, agents have revealed that
since 2022, DEFINO has been distributing narcotics as a major

supplier in the areas of Orange County, California and Long Beach, California. DEFINO admitted to being a source of supply to at least three co-conspirators after being arrested in Newport Beach while in possession of methamphetamine and fentanyl on or around May 18, 2022.

7.    In September 2023, LBPD uniformed officers conducted a traffic stop of DEFINO for not having a front license plate, a violation of 5200 (A) VC, and the rear license plate light did not work properly, a violation of 24252 (A)(1) VC. During the traffic stop, LPBD officers noted an open bottle of alcohol in the center console. During the sobriety test and through conversations with DEFINO and passenger Elaine ALLEN, LBPD officers determined there was enough probable cause to search the vehicle which resulted in the seizure of suspected counterfeit prescription containing fentanyl, powdered fentanyl, marijuana, and methamphetamine. Additionally, LBPD officers seized items indicative of drug sales such as baggies and digital scales.

8.    In October 2023, as a result of the previous traffic stop and subsequent surveillance of DEFINO's residence, LBPD Detectives obtained a California State search warrant #LB24S02, signed by the Honorable Judge Chet L. Taylor to search DEFINO's person, residence and vehicles. As a result of the search warrant, LBPD officers found and seized counterfeit pharmaceutical pills containing fentanyl, powdered fentanyl, and methamphetamine.

## V.  STATEMENT OF PROBABLE CAUSE

9.     Based on my training and experience, as well as conversations with other agents, detectives, and officers involved in this investigation, I am aware of the following information related to this investigation.

### A.     Newport Beach Investigation

10.    On or about May 19, 2022, Newport Police Department (NPD) Detective Stucken (Badge number 1338) opened an investigation into Rocky Syemour BRETT, date of birth 12/04/1983, for violation of Criminal Threats. According to Detective Stucken's reports, BRETT had made terroristic threats to victim A.F., by way of sending text messages of pictures of guns and pictures of the victim's residence, threatening to kill anyone who exited the home. According to A.F., he was in a financial dispute with BRETT over the exchange of goods for marijuana.

11.    Also, on or about May 19, 2022, NPD Detective Stucken, while conducting surveillance, located BRETT at a Carl's Junior restaurant located at 13425 Beach Boulevard in the city of Westminster, California. During surveillance, Detective Stucken observed a black colored Jeep Grand Cherokee, temporary license plate CB18A57, pick up BRETT from the restaurant. At that time, Detective Stucken and other officers of NPD initiated a traffic stop of the black Jeep Grand Cherokee to affect the arrest of BRETT.

12.    NPD successfully conducted a traffic stop of the vehicle and detained BRETT in the passenger seat and identified DEFINO as the driver who was also detained. Detective Stucken

spoke with DEFINO who admitted during their conversation that the center console contained methamphetamine, but denied consent to search the vehicle. Due to the verbal statement by DEFINO, Detective Stucken, along with NPD Detective FASANO, Detective Daymude, and Detective Aguilar, conducted a probable cause search of the vehicle.

13.   In the center console of the vehicle, Detective Stucken located approximately 7.9 grams of suspected methamphetamine. In a backpack found behind the driver-side seat, Detective Stucken located 46 clear plastic sandwich style baggies, which he knows from training and experience is commonly used in the distribution of narcotics. Detective Stucken also found and seized approximately 300 blue pills suspected to be counterfeit oxycodone containing fentanyl. Additionally, Detective Stucken found baggies containing miscellaneous unidentified pills, suspected fentanyl residue, digital scales, approximately 162 grams of suspected powder fentanyl, suspected psilocybin mushrooms, additional counterfeit suspected pharmaceuticals, and approximately 508 grams of suspected methamphetamine.

14.   Detective Stucken then arrested DEFINO for suspected violations of 11378 H&S Possession of a Controlled Substance for Sale and 11351 H&S Possession of a Controlled Substance for Sale. Additionally, due to the fact that DEFINO was operating a motor vehicle during the incident, Detective Stucken also arrested DEFINO for 11379(a) H&S Transportation of a Controlled Substance and 11352(a) H&S Transportation of a Controlled Substance. NPD

Detective Fletcher transported DEFINO to the Newport Beach Police Department for questioning and interview.

15.    During a recorded interview with Detective Stucken and DEFINO, DEFINO waived his Miranda Rights after being read them by Detective Stucken. DEFINO admitted the methamphetamine and the fentanyl located inside his vehicle belonged to him. DEFINO stated that there was approximately one pound of methamphetamine and approximately a half pound of fentanyl inside the vehicle. DEFINO admitted to being involved in illegal narcotics trafficking. DEFINO stated that BRETT is one of his employees and that he supplies BRETT methamphetamine and fentanyl for him to sell. DEFINO stated that he also has two additional employees who are involved in his drug trafficking organization. DEFINO only described them as a white female and a black male. DEFINO indicated that through his employees, he distributes approximately 10 to 15 pounds of methamphetamine per week.

       **B.    September 2023 Traffic Stop**

16.    On or about September 22, 2023, LBPD Officer Feldman (#11266), Officer Thomson (#11406) and Officer Chau (#11135) were conducting routine patrol in the city of Long Beach, California. At approximately 1:00 am, in the area of Anaheim Street and Temple Avenue, the three officers observed a white 2012 Kia Sorrento (California license plate 8VST430) make a sudden U-turn on Anaheim Street, and then subsequently park the vehicle along the northeast curb of Anaheim Street and Temple Avenue. Officer Feldman drove past the vehicle and Officer Feldman recognized the driver as DEFINO from previous drug sales and firearms related

arrests. Moments later, DEFINO drove away from the northeast corner, made another U-turn, and drove eastbound on Anaheim Street. A DMV record check showed that DEFINO was the registered owner of the vehicle.

17.    Officer Feldman noted while observing DEFINO that his vehicle did not have a front license plate, a violation of 5200 (A) VC, and the rear license plate light did not work properly, a violation of 24252 (A)(1) VC. Officer Feldman conducted a traffic stop of DEFINO's vehicle on Anaheim Street and Loma Avenue. After DEFINO had yielded to the traffic stop, Officer Feldman, Officer Thomson, and Officer Chau exited the patrol vehicle and contacted DEFINO and his front passenger, later identified as Elaine ALLEN (henceforth referred to as "ALLEN").

18.    Officer Feldman explained to DEFINO the reason for the traffic stop and requested to see DEFINO's driver's license. Officer Thomson noted there was an opened and almost empty bottle(approximately ¼ of the bottle left) of New Amsterdam Vodka in the center console cup holders. Officer Chau relayed the observation to Officer Feldman who then asked DEFINO to step out of the vehicle to conduct a Standardized Field Sobriety Test to determine if DEFINO could safely drive a motor vehicle. DEFINO complied with Officer Feldman's request and stepped out of the vehicle. Officer Feldman instructed DEFINO to step on the sidewalk and speak with Officer Chau for the sobriety tests.

19.    While Officer Chau was conducting the sobriety tests, Officer Thomson spoke with ALLEN. Officer Thomson asked ALLEN for her identification card and she began rummaging through her

purse. As she was looking for her identification card, Officer Thomson asked ALLEN if she had any drugs on her. Officer Thomson observed a black, plastic container and he believed it to contain marijuana. Officer Thomson asked ALLEN if there was marijuana inside the container and ALLEN subsequently withdrew a separate glass container containing a green, leafy substance believed to be marijuana. As ALLEN continued rummaging through her purse, Officer Thomson observed a scale inside her purse. Although ALLEN did not open the black container, Officer Thomson believed the container itself was large enough to contain more than an ounce of marijuana. Based on the believed weight of marijuana being over 28.5 grams (1 ounce), a violation of 11357 (C) HS, Officer Thomson asked ALLEN to step out of the vehicle. ALLEN grabbed several items off the passenger floorboard and placed them inside her purse. ALLEN left her purse inside the vehicle, complied with Officer Thomson's request, and she stepped out of the vehicle.

20.   Officer Thomson asked ALLEN and DEFINO how much total marijuana was inside the vehicle. DEFINO stated there was an approximate "1/8th" more marijuana inside the vehicle. In order to collect the evidence of the unsealed marijuana in the vehicle, Officer Feldman went inside ALLEN's purse. Officer Thomson looked inside the purse and collected the two containers which had green, leafy substance believed to be marijuana. Additionally, Officer Feldman opened a small, black, zipper case and observed a small glass container that contained a white, chalk-like substance. Based on officer Feldman's training and experience, he believed the item was cocaine.  DEA's southwest laboratory later

tested this substance, listed as Exhibit 16, and confirmed it to be cocaine base weighing approximately 6.136 grams.

21.   Also, in the purse, Officer Feldman observed an additional container which had additional loose white, chalk-like substance also believed to be cocaine, a baggie containing more suspected cocaine, and a glass container with more suspected cocaine. DEA's southwest laboratory later tested these substances, listed as Exhibit 17, and confirmed it to be cocaine base weighing approximately 3.345 grams in total.

22.   In the purse, Officer Feldman noted there was various loose bills in several denominations of ones, five, and ten-dollar bills. I know from training and experience, that loose bills in small denominations can be an indicator of street level distribution.

23.   On the front passenger floorboard, Officer Feldman found a brown, paper sandwich bag containing an off-white crystal-like substance suspected to be methamphetamine. Listed as Exhibit 20; DEA's southwest laboratory confirmed this substance to be Methamphetamine Hydrochloride weighing approximately 23.63 grams and 98% pure.

24.   Officer Feldman additionally found a camouflage bag that contained several white pills, believed to be Xanax.  Listed as Exhibit 9, DEA's southwest laboratory confirmed these pills to contain Alprazolam and weigh approximately 27.23 grams. Also in the camouflage bag was a bag containing white, chalk-like substance believed to be fentanyl. Listed as Exhibit 10, DEA's southwest laboratory confirmed this substance to be fentanyl and

weighed approximately 19.9 grams. The camouflage bag also
contained bags of an off-white, crystal-like substance believed
to be methamphetamine. Listed as Exhibit 14 and Exhibit 15, DEA's
southwest laboratory confirmed this substance to be
methamphetamine hydrochloride. Exhibit 14 weighed approximately
7.49 grams and Exhibit 15 weighed approximately 27.47 grams, both
Exhibits were approximately 98% pure. There were also two pills
believed to be Oxycodone, which DEA's southwest laboratory
confirmed under Exhibit 11. Green pills with "M30" markings,
suspected counterfeit Oxycodone, which DEA's southwest laboratory
confirmed as containing fentanyl and weighed 5.911 grams. Lastly,
the camouflage bag contained baggies and a digital scale.

    25.   Underneath the driver's seat, Officer Feldman found a
baggie containing a white powder-like substance, suspected to
contain fentanyl. Listed as Exhibit 21, DEA's southwest
laboratory found this substance to be cocaine base and weighed
approximately 3.23 grams.

    26.   Officer Feldman also found several baggies inside the
center console with white powdery residue, one of these baggies
had "FET" labeled on one of them. I know from training and
experience that FET is slang term for fentanyl.

    27.   Officer Thomson located a box of cigarettes near the
front passenger door and asked ALLEN if they were her cigarettes.
ALLEN confirmed the box of cigarettes was hers. Officer Thomson
inspected the contents of the box and he located two long, glass,
cylindrical pipes with black char marks. Based off my training

experience, I know that these pipes are commonly referred to as "stems" used to ingest cocaine base.

28.    Officer Chau then placed DEFINO under arrest for possession of drugs with the intent to sell and the transportation of drugs. During a search incident to lawful arrest, Officer Chau located $875 in various denominations in DEFINOS's front left pant pocket.

29.    Officer Feldman placed ALLEN under arrest for being in possession of paraphernalia. Officer Feldman then read ALLEN her Miranda rights. ALLEN informed Officer Feldman, post Miranda, that the drugs belonged to DEFINO who sells a variety of narcotics. ALLEN stressed that she only smokes cocaine-base and marijuana. ALLEN was issued a citation for 11375 (C)HS-Possess more than 28.5 grams of marijuana and 11364 (A) HS – Possession of paraphernalia. ALLEN signed the citation and she was released from the scene without incident.

### C.    October 2023 Search Warrant

30.    Several days after the traffic stop, Officer Thomson began an investigation into DEFINO. During the course of the investigation, Officer Thomson noted that DEFINO no longer resided at 3712 East Anaheim Street, Long Beach, California, and had moved to 624 East 20th Street, Long Beach, California.

31.    It is noted that in or around March 2023, LBPD arrested DEFINO following a search warrant at 3712 East Anaheim Street, Long Beach, California after LBPD officers had seized a large quantity of narcotics and firearms.

32.    With DEFINO continuing to distribute narcotics so soon after the search warrant and arrest in March 2023 as evident in the traffic stop in September 2023, the officers believed a search of the residence at 624 East 20th Street, Long Beach, California would yield additional evidence of drug sales. On October 4, 2023, the Honorable Judge Chet L. Taylor signed and authorized the search warrant (#LB24S02) for DEFINO's person, residence, and vehicles.

33.    On October 13, 2023, LBPD officers observed DEFINO exit his residence and lock the door behind him. DEFINO walked along the south curb of 20th Street to his white Kia Sorrento and opened the passenger door. Officer Thomson initiated a pedestrian detention of DEFINO pending service of a search warrant. Officer Feldman detained DEFINO by placing handcuffs on him.

34.    Officer Feldman then took possession of DEFINO's keys from DEFINO. DEFINO voluntarily provided the correct key to access his residence. LBPD officers announced their presence for the purpose of serving the search warrant and gained entrance into the residence without issue.

35.    LBPD officers searched 624 East 20th Street, Long Beach, California, a white 2012 Kia Sorrento (California license palte 8VST430), and DEFINO's person. During the search, LBPD officers found and seized the following drug Exhibits. All Exhibits have been tested by DEA's southwest laboratory:

KIA Sorrento:

1.  Exhibit 2: Methamphetamine Hydrochloride weighing 54.69 grams with a 97% purity

2.  Exhibit 3: Cocaine Base weighing 8.905 grams

3.  Exhibit 4: counterfeit M30 pills containing Fentanyl weighing 0.868 grams.

4.  Exhibit 5: Fentanyl weighing 0.068 grams

Residence – 624 East 20th Street

5.  Exhibit 1: methamphetamine hydrochloride weighing 565.2 grams with a 98% purity

6.  Exhibit 8: powdered fentanyl with a net weight of 176.03 grams net. Amount of pure substance was 51.04 grams. Also present was 24.3 grams of cocaine and Xylazine.

DEFINO's Person

7.  Exhibit 6: methamphetamine hydrochloride weighing 5.04 grams with a 97% purity

8.  Exhibit 7: fentanyl with a net weight of 12.35 grams and a 29% purity. Also present was Xlyazine. Amount of pure fentanyl was 3.58 grams.

36.  In addition to the drug exhibits seized, LBPD officers seized multiple cell phones, digital scales, plastic bags, and a large amount of U.S. currency found on DEFINO's person totaling $3,971.

**VI. <u>CONCLUSION</u>**

37.  For all the reasons described above, there is probable cause to believe that Timothy DEFINO violated 21 U.S.C.

//

//

//

//

§§ 841(a)(1), (b)(1)(A)(viii) (possession with intent to distribute methamphetamine), on or about October 13, 2023.

_____/s/ Jason N. Lup_____

JASON N. LUP

Special Agent, DEA

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 22nd day of October, 2024.

HONORABLE DOUGLAS F. MCCORMICK
UNITED STATES MAGISTRATE JUDGE